UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLINE COCKBURN | CIVIL ACTION |
| VERSUS | NO. 22-2058 |
| APEX OIL COMPANY, INC., *et al.* | SECTION M (4) |

## ORDER & REASONS

Before the Court are cross-motions for summary judgment filed by third-party defendant AmSpec Services, LLC ("AmSpec")[1] and defendant and third-party plaintiff Apex Company, Inc. ("Apex"),[2] seeking a ruling on whether AmSpec owes Apex contractual defense and indemnity for the accident that forms the basis of this litigation. Both parties respond in opposition to the other's motion,[3] and Apex replies in further support of its motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting AmSpec's motion, and denying Apex's motion, because no defense and indemnity is owed under the contract as AmSpec's employee was not performing work under a contract between AmSpec and Apex at the time of the accident.

**I.    BACKGROUND**

This case concerns a personal injury. On July 5, 2021, plaintiff Cline Cockburn was employed by AmSpec as a petrochemical inspector performing work for defendant Marathon Petroleum Company, LP ("Marathon") aboard *in rem* defendant the M/V *San Roberto*, a vessel

---

[1] R. Doc. 83.
[2] R. Doc. 84.
[3] R. Docs. 91; 92.
[4] R. Doc. 95.

owned and operated by defendant Buffalo Marine Service, Inc. ("Buffalo Marine").[5]  At the time, the *San Roberto* was moored at a dock facility in Mt. Airy, Louisiana, that was owned and operated by Apex.[6]  Cockburn was injured while disembarking from the *San Roberto* when the gangway leading from the barge to the dock "gave way."[7]  Cockburn filed this suit against Apex, Marathon, Buffalo Marine, and the *San Roberto*, *in rem*, alleging claims under Louisiana law, the general maritime law, and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b).[8]  Apex then filed a third-party demand against AmSpec, seeking contractual defense and indemnity for Cockburn's claims.[9]

On November 18, 2019, Apex and AmSpec had entered into a contract that gives AmSpec's employees the right to access Apex's facilities for a certain purpose.[10]  Specifically this access agreement provides that AmSpec "is granted the right and privilege of access to [Apex's] Terminals for the purpose of performing work or providing services as specified under contracts or purchase orders with [Apex]."[11]  The agreement further provides that AmSpec "unconditionally, irrevocably and absolutely agrees to protect, defend, and indemnify and hold harmless [Apex] … from any and all" suits, damages, and reasonably incurred costs, expenses, and attorney's fees, "arising out of, based upon, relating to or otherwise involving the exercise by [AmSpec] or any of its employees … of the privileges granted by [Apex] to [AmSpec] hereunder" – that is to say, under the agreement.[12]

---

[5] R. Doc. 38 at 3.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 4-9.
[9] R. Doc. 12 at 6-7.
[10] R. Doc. 83-4 at 21-23.
[11] *Id.* at 21.
[12] *Id.*

2

## II.   PENDING MOTIONS

AmSpec and Apex filed cross-motions for summary judgment regarding AmSpec's alleged obligation to provide Apex with defense and indemnity for Cockburn's claims.[13] AmSpec argues that the access agreement, including the defense-and-indemnity provision, applies only if AmSpec is performing work or providing services to Apex – or, at least, pursuant to contracts or purchase orders with Apex – at the time of the accident.[14] To support its argument, AmSpec points to the contractual language stating that AmSpec "is granted the right and privilege of access to [Apex's] Terminals for the purpose of performing work or providing services as specified under contracts or purchase orders with [Apex]."[15] AmSpec contends that, because it was performing work for Marathon, and not Apex, at the time of the accident, the access agreement, including the defense-and-indemnity provision, is not applicable.[16] Said another way, AmSpec argues that it agreed to defend and indemnify Apex only when AmSpec uses the privilege of access granted under the agreement, which requires that AmSpec be performing work or providing services as specified under a separate contract or purchase order between AmSpec and Apex, not a third party, when the accident occurs.[17] AmSpec further argues that no contract is necessary for its employees to enter Apex's docks as a subcontractor working for a third party.[18]

Apex concedes that, although the access agreement refers to other contracts and purchase orders, Apex never had any other contracts or purchase orders with AmSpec.[19] Indeed, Apex states that AmSpec is hired to perform testing by Apex's customers, such as Marathon, that use Apex's

---

[13] R. Docs. 83; 84.
[14] R. Doc. 83-1 at 1.
[15] *Id.* at 2-3.
[16] *Id.*
[17] *Id.* at 3.
[18] R. Doc. 91 at 1-2.
[19] R. Doc. 84-1 at 3.

Mt. Airy terminal, and not by Apex itself.[20]  Apex argues, however, that regardless of the access agreement's reference to other contracts and purchase orders, it is that agreement, including its defense-and-indemnity provision, that applies here because it is the only means by which AmSpec could access Apex's secure terminal facility.[21]

### III. LAW & ANALYSIS

#### A. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The substantive

---

[20] *Id.*
[21] *Id.* at 4; R. Docs. 92 at 1-2; 95 at 1-3.  Apex anticipated that AmSpec would argue that the contractual defense-and-indemnity provision is rendered void by the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), La. R.S. 9:2780, and spends the rest of its memorandum in support of its motion addressing that argument.  Because AmSpec never raises any issue concerning the LOAIA, this Court need not address Apex's argument.

law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*,

477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Contract Interpretation

A contract is the law between the parties, and courts must give legal effect to the contract according to the parties' common intent. *Sanders v. Ashland Oil, Inc.*, 696 So. 2d 1031, 1036 (La. App. 1997). This intent is to be determined by the words of the contract when they are "clear and explicit and lead to no absurd consequences." La. Civ. Code arts. 2045, 2046; *Sanders*, 696 So. 2d at 1036. "The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit." *Sanders*, 696 So. 2d at 1036 (citing, *inter alia*, La. Civ. Code art. 2046 cmt. b and *Cashio v. Shoriak*, 481 So. 2d 1013, 1015 (La. 1986)). "The determination of whether a contract is clear or ambiguous is a question of law." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007). "The words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* art. 2050.

Here, the clear and unambiguous terms of the access agreement show that AmSpec does not owe Apex defense and indemnity for Cockburn's accident. The agreement plainly states that it, and its defense-and-indemnity clause, apply only when AmSpec performs work for or provides services to Apex or another entity under separate contracts or purchase orders between AmSpec and Apex.[22] And it is undisputed that AmSpec was not performing work or providing services to Apex or any other entity pursuant to another contract or purchase order between AmSpec and

---

[22] R. Doc. 83-4 at 21.

Apex at the time of the accident.[23]  Indeed, AmSpec was performing work as specified under contracts with Marathon.[24]  Thus, pursuant to its clear and unambiguous terms, the access agreement does not apply.  Apex attempts to expand the plain meaning of the agreement by arguing that it is the only document providing AmSpec employees access to Apex's terminal facility, and so, it must apply despite its reference to other contracts and purchase orders.  But the plain language of the agreement cannot be contorted to read this way.  If Apex intended for the access agreement to apply any time AmSpec's employees entered its terminal facility, regardless of the contract or purchase order under which AmSpec was working, Apex should have said so in the agreement.[25]  It did not.  In sum, AmSpec does not owe Apex defense and indemnity for Cockburn's accident because AmSpec was not performing work or providing services pursuant to a separate contract or purchase order between AmSpec and Apex at the time of the accident.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that AmSpec's motion for summary judgment (R. Doc. 83) is GRANTED, and Apex's third-party claims against AmSpec are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Apex's motion for summary judgment (R. Doc. 84) is DENIED.

---

[23] R. Docs. 83-2 at 2; 84-1 at 3-4.
[24] R. Docs. 83-2 at 2; 84-1 at 3.
[25] Apex filed the declaration of its president J.Q. Affleck in conjunction with its opposition to AmSpec's motion.  R. Doc. 92-2; *see also* R. Doc. 95.  Affleck states that, because the terminal facility is secure, any party seeking entry must have a signed access agreement and proof of insurance on file with Apex.  R. Doc. 92-2 at 1.  He also states that, because the access agreement at issue is the only contract between AmSpec and Apex, Cockburn would not have been admitted to the terminal facility without it, and therefore it must apply.  *Id.* at 2.  This misses the point.  The plain terms of the access agreement at issue preclude its application to this situation because AmSpec was performing work or providing services under a contract with Marathon, not Apex, and the fact that Apex may have required AmSpec to sign an irrelevant access agreement in order for Cockburn to be admitted to the terminal facility cannot and does not change the express terms of the agreement.

New Orleans, Louisiana, this 19th day of September, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE