**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CLINE COCKBURN** | * | **CIVIL ACTION NO.: 2:22-cv-02058** |
| | * | |
| **VERSUS** | * | **JUDGE: BARRY W. ASHE** |
| | * | |
| **APEX OIL COMPANY, INC, M/V SAN ROBERTO and BUFFALO MARINE SERVICE, INC.** | * * * * | **MAGISTRATE: KAREN WELLS ROBY** |

**************************************************************************

## PLAINTIFF'S RULE 26 EXPERT DISCLOSURES

COMES NOW, Plaintiff, Cline Cockburn, who hereby discloses the following witnesses who may offer expert opinions at the trial of this case. This Disclosure is being made in accordance with Rule 26(a)(2) and pursuant to the Scheduling Order issued in this case.

**A. Disclosure of Witnesses under Rule 26(a)(2)(B)**

1. Elizabeth B. Martina, MHS, CRC, CLCP
   Jordan A. Frankel, J.D., MHS, CRC, CLCP
   Elizabeth B. Martina & Associates
   4424 Chastant Street, Suite 102
   Metairie, LA 70006
   Jordan Frankel and Elizabeth Martina will testify as experts as indicated in their contemporaneously produced report regarding their opinions relative to, among other things, the cost of Plaintiff's anticipated future medical care as outlined by his treating physicians as well as Plaintiff's future wage earning capacity given the limitations resulting from his accident-related injuries. A copy of Jordan Frankel and Elizabeth Martina's expert report is being forwarded via email to all parties in conjunction with the service of this Disclosure.



Exhibit 10.001

2. Shael Wolfson, Ph. D.
   3436 Magazine Street, #624
   New Orleans, LA 70115
   Shael Wolfson will testify as an expert economist as will be indicated in his report, and will offer expert opinions relative to, among other things, the present-day value of Plaintiff's anticipated future medical care as well as the past and future lost wages Plaintiff suffered as a result of the incident. A copy of Dr. Wolfson's expert report is being forwarded via email to all parties in conjunction with the service of this Disclosure.

3. Capt. Ronald L. Campana
   640 Brouilly Drive
   Kenner, LA 70065
   Marine liability, safety, and operations expert to provide expert testimony concerning all issues of general maritime law unseaworthiness, liability, unsafe or dangerous acts or working conditions, actions below the standard of care in the industry, docks, gangways, means of ingress and egress of vessels, equipment safety, procedures and operations, vessel crewing and operations, marine policies and procedures, including operational and safety policies and procedures, and all issues of negligence or liability on the part of the defendants as well as any alleged comparative fault on the part of plaintiff. A copy of Capt. Campana's expert report is being forwarded via email to all parties in conjunction with the service of this Disclosure.

**B. Disclosure of Witnesses under Rule 26(a)(2)(C)**

Plaintiff discloses the following individuals as witnesses who may offer expert opinions pursuant to Federal Rules of Evidence 702, 703 or 705 at the trial of this case. The following are the names of the experts and the subject matters and summaries of the facts and opinions they may offer:

1. Treatment Providers at OrthoLA, including but not limited to William Johnson, M.D.
   465 Belle Terre Blvd
   Laplace, LA 70068
   (985) 625- 2200
   Dr. Johnson performed:1. Partial medial meniscectomy; 2. Partial lateral meniscectomy; 3. Resection of plica; 4. Removal of loose bodies; 5. Chondroplasty of medial femoral condyle at Southlake Surgery Center on August 26, 2021. Dr. Johnson also administered Euflexxa injections on January 12, 2022, January 19, 2022, and January 26, 2022. On June 28, 2022, Dr. Johnson performed an arthroplasty partial knee left at St. James Parish Hospital due to Plaintiff's medial joint degenerative joint disease (DJD) of left knee, failed conservative treatment including knee arthroscopy steroid and viscosupplementation



Exhibit 10.002

injections, physical therapy, and bracing. Dr. Johnson provided the following recommendations:

- As a result of the 7/05/21 accident, Mr. Cockburn needs to follow up with an Orthopedic Surgeon on an as needed basis in regard to the left knee.
- As a result of the 7/05/21 accident, Dr. Johnson indicated that within 10 years, Mr. Cockburn will need a left total knee replacement (1 night/23 hour stay) with the following pre- and post-operative treatment:
  - Pre-operative left knee x-rays;
  - Pre-operative CBC, CMP, urinalysis, EKG, and chest x-ray;
  - Post-operative home health physical therapy for 2 weeks;
  - Post-operative follow up with an Orthopedic Surgeon monthly for 4 months and at 1 year with left knee x-rays 1 time during the 4 months and 1 time at 1 year;

    and
  - Post-operative physical therapy 2 times per week for 3 to 4 months.

In regard to restrictions as a result of the 7/05/21 accident, Dr. Johnson indicated that Mr. Cockburn is currently and permanently restricted to light duty with no climbing, squatting, or kneeling and the ability to alternate between sitting and standing as needed in regard to the left lower extremity. Dr. Johnson indicated that post left total knee replacement, Mr. Cockburn will be off work for 3 to 4 months and then released to the above restrictions on a permanent basis.

These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedures due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

2. Treatment Providers at Concentra Urgent Care and Concentra Health Systems, including but not limited to Cathy Hammond Moulton, M.D.
   Janet Dornier, NP
   1600 Williams Blvd
   Kenner, LA
   (504) 468-1506
   Plaintiff presented here following the subject incident with back, knees, neck, and hip pain. Medications were prescribed and he was referred to physical therapy. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past

and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

3. Treatment Providers at Poche Medical Clinic, including but not limited to Jerry Poche, M.D.
   1645 Lutcher Avenue
   Lutcher, LA 70071
   (225)869-3493
   Plaintiff treated here following the subject incident. Plaintiff also presented here on October 25, 2023 for pre-operative clearance for the October 27, 2023, cervical fusion. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

4. Treatment Providers at Brignac Physical Therapy, including but not limited to Chantel Brignac, PT
   1732 Deroche Circle, Suite B
   Gramercy, LA 70052-3548
   (225) 869-0389
   Plaintiff received physical therapy following the subject incident. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

5. Treatment Providers at Riverbend Imaging, including but not limited to Stephanie Casey, M.D.
   490 Belle Terre Blvd.
   LaPlace, LA 70068
   (985) 359-7226
   Plaintiff presented for a left knee MRI on August 13, 2021, wherein the impression was: Impression: 1. Longitudinal horizontal tear anterior horn/post horn/body medial meniscus; 2. Findings suggest prior lateral meniscal repair; 3. Chondromalacia patella; 4. Small knee joint effusion and popliteal cyst; 5. Soft tissue edema anterior to the extensor mechanism. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers

may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

6. Treatment Providers at Southlake Surgery Center, including but not limited to William Johnson, M.D.
694 Belle Terre Blvd
LaPlace, LA 70068
(985) 359-6694
Dr. Johnson performed: 1. Partial medial meniscectomy; 2. Partial lateral meniscectomy; 3. Resection of plica; 4. Removal of loose bodies; 5. Chondroplasty of medial femoral condyle at Southlake Surgery Center on August 26, 2021. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

7. Treatment Providers at SpineCare Medical Group, Inc., including but not limited to Alexis Waguespack, M.D.
Joelle Fabian, PA
3939 Houma Blvd.
Metairie, LA 70006
Dr. Waguespack diagnosed Plaintiff with left sided cervical disc herniation C3-4, C4-5, C5-6. On January 24, 2023, Plaintiff was administered an IM Toradol injection in office for cervical pain. On August 22, 2023, it was noted that Plaintiff had disc herniation C4-5, C5-6 now with progressive neurologic weakness and evidence of cord compression with gait disturbance consistent with myelopathy. A celestone injection was administered in office. On October 27, 2023, Dr. Waguespack performed an anterior cervical fusion C3-4, C4-5, C5-6 at Omega Hospital. Dr. Waguespack has provided the following recommendations:

    • As a result of the 7/05/21 accident, Mr. Cockburn needs to follow up with a Spine Surgeon every 3 months with cervical x-rays at each visit until he undergoes posterior cervical fusion at C3-C6 within the next 2 years.
    • As a result of the 7/05/21 accident, Mr. Cockburn needs the following medications, or a similar combination of medications, until he undergoes posterior cervical fusion at C3-C6 within the next 2 years:
        - Norco 7.5 mg, 3 times daily; and
        - Gabapentin 600 mg, 3 times daily.

- As a result of the 7/05/21 accident, Mr. Cockburn needs posterior cervical fusion at C3-C6 within the next 2 years with the following pre- and post-operative treatment:
    - Pre-operative cervical MRI;
    - Post-operative follow up with a Spine Surgeon monthly for 6 months and then annually for the remainder of his lifetime with cervical x-rays at each visit;
    - Post-operative medications including Tramadol 50 mg 4 times daily for 3 to 6 months, Valium 5 mg daily for 3 to 6 months, and Movantik 25 mg daily for 3 to 6 months; and
    - Post-operative physical therapy 3 times per week for 4 weeks.
- As a result of the 7/05/21 accident, given Mr. Cockburn's age, he will more probable than not need an adjacent level cervical fusion at C6-C7 over his lifetime with the following pre- and post-operative treatment:
    - Pre-operative cervical MRI;
    - Post-operative follow up with a Spine Surgeon monthly for 6 months and then annually for the remainder of his lifetime with cervical x-rays at each visit;
    - Post-operative medications including Tramadol 50 mg 4 times daily for 3 to 6 months, Valium 5 mg daily for 3 to 6 months, and Movantik 25 mg daily for 3 to 6 months; and
    - Post-operative physical therapy 3 times per week for 4 weeks.
- As a result of the 7/05/21 accident, Dr. Waguespack reported that Mr. Cockburn needs further work up of the lumbar spine after his cervical spine is addressed. Dr. Waguespack indicated that Mr. Cockburn may need imaging, physical therapy, interventional procedures, and/or surgery but that determination cannot not be made at this time.

Regarding physical restrictions as a result of the 7/05/21 accident, Dr. Waguespack reported that Mr. Cockburn is currently at a no work status and will remain at a no work status until he reaches 1 year post posterior fusion a C3-C6, at which time he will be permanently restricted to no lifting greater than 10 pounds, no overhead activity, and occasional twisting and bending. Dr. Waguespack reported that post adjacent level cervical fusion, Mr. Cockburn will be at a no work status until he reaches MMI at 1 year, at which time he will be permanently restricted to no lifting greater than 10 pounds, no overhead activity, and occasional twisting and bending.

These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

8. Treatment Providers at Diagnostic Imaging Services, including but not limited to Bernard Landry, M.D.
3434 Houma Blvd. Suite 100
Metairie, LA 70006
(504) 888-7921
Plaintiff presented to DIS on April 12, 2022 for MRIs of the cervical spine and lumbar spine. The cervical impression was: 1. Straightening of the cervical lordotic curvature suspicious for muscle spasm/strain; 2. At C3-C4 disc desiccation and posterior disc bulge effacing the ventral thecal sac and contacting left ventral hemicord and exiting C4 nerve root with severe lateral recess and medial foraminal stenosis; 3. At C4-C5 disc desiccation with right paracentral disc herniation contacting and altering the right ventral hemicord contour and thickness with moderate ipsilateral medial foraminal encroachment; 4. At C5-C6 broad-based disc bulge effacing the ventral thecal sac approximating the ventral spinal cord surface with right worse than left foraminal stenosis, severe and moderate, respectively, secondary to facet joint more than uncovertebral joint hypertrophy. The lumbar impression was: 1. Facet joint fluid at L3-L4 possible anterior annular tear at the same level. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

9. Treatment Providers at St. James Parish Hospital, including but not limited to Jerry Poche, M.D.
William Johnson, M.D.
Brant Casford, M.D.
Chad Madere, NP
Anu Vellanki, M.D.
Jacqueline Kirby, M.D.
1645 Lutcher Avenue
Lutcher, LA 70071
(225) 869-5512
Plaintiff had a preoperative appointment with Dr. Poche on June 6, 2022. On June 28, 2022, Plaintiff was admitted with progressively worsening pain and medial joint DJD. He failed conservative treatment including knee arthroscopy, physical therapy, and injections and was admitted for a partial knee replacement. Accordingly, Plaintiff underwent an arthroplasty partial knee, left performed by William Johnson, M.D. on June 28, 2022. Plaintiff was diagnosed with post-operative anemia during his admission. He returned to St. James Parish Hospital on July 5, 2022 for an ultrasound of the lower extremity venous duplex left to rule out DVT. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above

listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

10. Treatment Providers at St. James Emergency Care Partners
PO Box 120546
Dept 0546
Dallas, TX 75312-0546
Plaintiff presented to St. James Parish Hospital ED on July 5, 2022 for an ultrasound of the lower extremity venous duplex left to rule out DVT. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

11. Treatment Providers at Zephyr Anesthesia
3850 N Causeway Blvd. Ste 1565
Metairie, LA 70002
These providers administered anesthesia to Plaintiff on October 27, 2023. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

12. Representatives of New Orleans Headache & Neurology Clinic, A.P.M.C., including but not limited to Dhanpat Mohnot, M.D.
120 Meadowcrest Street, Suite 420
Gretna, LA 70056
(504) 391-7547
Plaintiff presented to Dr. Mohnot on June 17, 2022 for an EMG and Nerve Conduction Study. The impression was NCV/needle EMG exam suggest mixed sensori motor polyneuropathy. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed

medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

13. Treatment Providers at Doctors Imaging, including but not limited to Stephanie Casey, M.D.
4204 Teuton Street
Metairie, LA 70006
(504) 883-8111
Plaintiff presented for a left knee MRI on July 17, 2023, wherein the impression was: 1. Medial femorotibial compartment hemiarthroplasty. No evidence for bone or soft tissue infection; 2. Knee joint effusion; 3. Longitudinal horizontal tear anterior horn/body lateral meniscus with parameniscal cyst. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

14. Treatment Providers at Omega Hospital, including but not limited to Alexis Waguespack, M.D.
2525 Severn Avenue
Metairie, LA 70002
(504) 832-4200
On October 27, 2023, Dr. Waguespack performed an anterior cervical fusion C3-4, C4-5, C5-6 at Omega Hospital. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

15. Treatment Providers at Neuro Technology Institute, including but not limited to Jesse Dillard
    3535 S. Sherwood Forest Blvd, Suite 247
    Baton Rouge, LA 70816
    On October 27, 2023, an intraoperative neurophysiology report was conducted during the anterior cervical fusion C3-4, C4-5, C5-6 performed by Dr. Waguespack at Omega Hospital. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

16. Treatment Providers at Neuro- Ortho Solutions, Inc.
    1430 Old Spanish Trail, Suite 20
    Slidell, LA 70458
    Following the October 27, 2023, anterior cervical fusion C3-4, C4-5, C5-6 performed by Dr. Waguespack at Omega Hospital, a bone growth stimulator was ordered from and provided by Neuro-Ortho Solutions, Inc. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

17. Treatment Providers at At Home Healthcare
    150 S. 7th Street, Suite B
    Ponchatoula, LA 70454
    (504) 513-3125
    Plaintiff received home health care following his October 27, 2023, anterior cervical fusion C3-4, C4-5, C5-6. These treatment providers will testify, more probable than not, that Plaintiff sustained the above listed injuries and was required to undergo the above listed medical procedure due to the injuries he sustained as a result of the subject incident. These treatment providers may also provide testimony regarding treatment of the injuries Plaintiff sustained as a result of the subject incident. The testimony will additionally consist of diagnosis, prognosis of injuries, interpretation of all films, diagnostic imaging, and testing, current and future restrictions, past surgeries and procedures, the need for future surgeries and procedures, costs of past and future treatment, causal relation of Plaintiff's injuries to

the incident which forms the basis of this litigation and any other relevant issue concerning Plaintiff.

The foregoing physicians, health care providers, the custodians of records for physicians, and custodians of records for health care providers or other medical personnel have been involved in the care and treatment of Plaintiff, Cline Cockburn. All physicians, healthcare providers, or other medical personnel are expected to testify regarding their education, experience, and credentials as physicians or healthcare providers or medical personnel, and are expected to testify about any healthcare or medical issues within their area of expertise, their diagnoses, care, and treatment of Plaintiff, Plaintiff's medical conditions, Plaintiff's medical histories, Plaintiff's past medical care and treatment (including but not limited to any and all surgical recommendations or other procedures such as injections), medical evaluations of Plaintiff and findings from the medical evaluations of Plaintiff, x-rays, MRIs, CTs, ultrasounds, and other radiology and/or imaging of Plaintiff and the findings and/or pathology in/on that imaging, the contents of the medical records regarding Plaintiff, the origin, nature, and severity of Plaintiff's injuries, Plaintiff's prognoses and future treatment needs (including but not limited to any and all surgical or other procedures such as spine surgery and/or injections), and the opinions they formed regarding Plaintiff based upon their education, training, and evaluation of Plaintiff. These witnesses are further expected to testify that more probable than not, Plaintiff's injuries were proximately caused by the incident at issue and the mechanism of injuries. They further may testify regarding Plaintiff's disability ratings and an opinion as to the cause of those disability ratings of Plaintiff, and any and all restrictions on Plaintiff's daily activities as well as any other restrictions and any opinion as to the cause for these restrictions.

These witnesses also may testify regarding the reasonableness and necessity of the charges for professional services rendered by themselves and possibly Plaintiff's other treating physicians,



Exhibit 10.011

health care providers or other medical personnel, or facilities, and the reasonableness and necessity of any charges for any future professional services, including surgery and/or future procedures such as ESIs and/or RFAs, rendered by themselves and possibly Plaintiff's other treating physicians, health care providers or other medical personnel, or facilities. These witnesses may testify to their opinion that the medical bills and expenses incurred by Plaintiff were reasonable and necessary and what future medical expenses may be reasonable and necessary.

These witnesses have reviewed the medical and billing records of Plaintiff, Cline Cockburn and/or have examined Plaintiff. All impressions, findings and conclusions, services provided, and billing information can be found in the medical records pertaining and/or relating to Plaintiff maintained by the doctors and health care providers and produced in this case. These witnesses may testify concerning their diagnoses, treatment recommendations, including surgery recommendations and/or any recommendations for procedures such as ESIs and/or RFAs, and prognosis(es) for Plaintiff, and the reasonableness and necessity of the charges for professional services rendered by themselves and possibly Plaintiff's other treating physicians. These witnesses are further expected to testify that more probable than not, Plaintiff's injuries were proximately caused by the incident at issue. These witnesses are of the opinion that the medical bills and expenses incurred by Plaintiff were reasonable and necessary. These witnesses may offer opinions that Plaintiff may require additional future medical treatment, including surgery and/or any other procedures as referenced above, which have been recommended by Dr. Waguespack, Dr. Johnson, and/or any of Plaintiff's other treating physicians, and any other procedures that are necessary because of injuries that he sustained in or as a result of the subject incident and may give opinion testimony concerning the reasonable charges for future medical treatment that is necessary because of injuries Plaintiff suffered as a result of the subject incident.

The medical records of the non-retained experts and of other treating physicians, health care providers or other medical personnel, and facilities and the deposition testimony (if applicable) of the foregoing non-retained expert witnesses shall be deemed to supplement the general substance of each witnesses' testimony, and Plaintiff specifically refers Defendants to the records already produced in this litigation.

A description of the substance of the testimony concerning such witnesses is largely accessible to Defendants through the medical records. Any physician or health care provider who may be called to testify may review records from other physicians or health care providers and consider such records in treatment of Plaintiff and in formulating opinions. An executed authorization and medical and billing records have been produced and/or offered to Defendants, and Defendants also have obtained medical and billing records.

All custodians of records may testify as to the manner in which medical records are generated and kept, as well as to the reasonableness/necessity of medical expenses incurred on behalf of Plaintiff in connection with the injuries sustained as a result of the subject incident.

In addition, as Plaintiff is continuing to undergo medical treatment, additional healthcare providers may later be identified.

**CROSS-DESIGNATIONS**

Plaintiff hereby cross-designates and states that he may call any expert identified or designated by Defendants to elicit expert opinions, subject to any objections Plaintiff may make concerning the designation of such experts and the admissibility of their opinions. Plaintiff does not vouch for the credentials or credibility of any other party's expert witness(es), nor by this designation does Plaintiff intend to adopt the opinions set forth in the reports, if any, generated by any other party's expert witness(es). In the event that a present or future party designates an expert,

but that party then is dismissed for any reason from this suit or fails to call any designated expert, Plaintiff reserves the right to designate and/or call any such expert designated by any party. Although Plaintiff may or may not agree with their opinions and may or may not agree with their qualifications as an expert witness, Plaintiff retains the right to call as an expert witness, any and all experts as may hereinafter be designated by any Defendant.

**ADDITIONAL RESERVATIONS**

Plaintiff further reserves the right to call any of the following experts who may have knowledge of relevant facts:

1. Any expert which has been or will be named by any other party in any answer to interrogatory, even if the party who designated the expert is no longer a party to the lawsuit at the time of trial;
2. Any expert witness whose name appears on any document which has been or will be produced by any party in any response to requests for production;
3. Any expert whose name is reflected in any document which has been or will be obtained through the use of medical authorizations;
4. Any expert whose name is reflected in any document which has been or will be submitted to the Court by affidavit;
5. Any expert whose name is reflected in any document which has been or will be subpoenaed by any party;
6. Any expert whose name appears in the transcript of any deposition taken in this matter; and
7. Any expert whose name is reflected in any document which has been or will be attached to the transcript of any deposition.

The descriptions provided above are not intended to be an exhaustive list of the areas to be addressed by the expert. Rather, this information is being furnished to provide opposing counsel with an indication of the general areas that the expert may address and to provide guidance on the types of information or materials that the expert has or may review in connection with his or her work in this case.

Plaintiff reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel, which will not be deemed a waiver by Plaintiff of any privileges, including the attorney/client privilege and/or work product privilege.

Plaintiff reserves the right to call rebuttal expert witnesses who are not designated and whose testimony cannot be reasonably foreseen until the presentation of the evidence against Plaintiffs.

Plaintiff would name any agent or employee thereof of any health care provider(s) named above who may have rendered treatment to Plaintiff during relevant time periods and whose name or initials appear in their medical or billing records kept by said health care provider(s).

Plaintiff further retains and reserves the right to call other experts if any are allowed by the Court to be designated by any other party to this action.

This disclosure also serves to update and supplement all of Plaintiff's discovery responses and disclosures herein.

If any of the expert witnesses discussed herein are not available at the time of trial, Plaintiff will offer as evidence the depositions of such expert witnesses in lieu of their live testimony.

Respectfully submitted:

*/s/ Thomas W. Shlosman*

Thomas W. Shlosman (Bar No. 34086)
Barrett Rice (Bar No. 30034)
Shlosman Law Firm
4907 Magazine Street
New Orleans, LA 70115
(504) 826-9427 Phone
(504) 324-0431 Fax
tom@shlosmanlaw.com
barrett@shlosmanlaw.com
***Attorney for Plaintiff, Cline Cockburn***

CERTIFICATE OF SERVICE

I hereby certify that on 22nd day of July 2024 a copy of the foregoing pleading was served on all counsel of record to this proceeding by facsimile, email, hand or by United States mail service, properly addressed, and first class postage prepaid.

*/s/ Thomas W. Shlosman*
Thomas W. Shlosman



Exhibit 10.016