UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLINE COCKBURN                                                    CIVIL ACTION

VERSUS                                                            NO. 22-2058

APEX OIL COMPANY, INC., *et al.*                                  SECTION M (4)

**<u>ORDER & REASONS</u>**

Before the Court is the motion *in limine* of defendant Apex Oil Company, Inc. ("Apex") to exclude evidence and argument related to spoliation of evidence.[1] Also before the Court is a related motion for adverse presumption filed by plaintiff Cline Cockburn.[2] Both parties respond in opposition to the other's motion,[3] and Apex replies in further support of its motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

I.  **BACKGROUND**

This case concerns a personal injury. On July 5, 2021, Cockburn was employed by AmSpec Services, LLC ("AmSpec") as a petrochemical inspector performing work for Marathon Petroleum Company, LP aboard *in rem* defendant the M/V *San Roberto*, a vessel owned and operated by defendant Buffalo Marine Service, Inc. ("Buffalo Marine").[5] At the time, the *San Roberto* was moored at a dock facility in Mt. Airy, Louisiana, that was owned by Apex.[6] Cockburn

---

[1] R. Doc. 124.
[2] R. Doc. 132.
[3] R. Docs. 173; 174.
[4] R. Docs. 183.
[5] R. Doc. 38 at 3.
[6] *Id.*

was injured while disembarking from the *San Roberto* when the gangway leading from the barge to the dock "gave way."[7]

On July 5, 2022, Cockburn filed this suit against Apex, Buffalo Marine, and the *San Roberto*, *in rem*, and amended the complaint on June 21, 2023, alleging negligence claims under Louisiana law, the general maritime law, and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b).[8] As to Apex, Cockburn alleges that, as the owner of the dock, Apex owed invitees a duty to provide a safe means of ingress and egress of vessels, as well as reasonably safe equipment, such as a gangway.[9] He asserts that Apex was negligent under Louisiana law by: (1) using a defective gangway; (2) using defective gangway lines; (3) failing to train Apex employees in the proper use of its gangway; (3) failing to warn of hidden defects in the gangway known to Apex employees, but not observable to others by routine and ordinary observation; (4) failing to properly secure the gangway; (5) untying the gangway in an untimely manner; and (5) removing the gangway in an untimely manner.[10]

Apex asserts that, although it owned the gangway, the gangway was controlled and maintained by non-party Petroleum Fuel & Terminal Company ("PF&T") at all relevant times.[11] The gangway was purchased in October 2020, and was not involved in any incidents save the one at issue in this litigation.[12] After the accident, PF&T terminal manager, Eric Plaisance, inspected the gangway and found nothing wrong with it, as did PF&T dockman, Jeff Cambre.[13] The gangway remained in use at the dock for more than a year and a half after Cockburn's July 2021

---

[7] *Id.*
[8] R. Docs. 1; 38.
[9] R. Doc. 38 at 4.
[10] *Id.*
[11] R. Docs. 124-1 at 2; 174 at 1.
[12] R. Docs. 124-1 at 2-3; 174 at 1-2.
[13] R. Docs. 124-1 at 2; 174 at 1-2.

accident.[14] In March 2023, Plaisance was purchasing a second gangway to place at the other end of the dock, and decided, on his own, to replace the subject gangway at the same time.[15] The subject gangway was scrapped when the new ones arrived.[16]

## II.    PENDING MOTIONS

The pending motions concern the destruction of the gangway at issue. Apex contends that, because it did not have control of the gangway or intentionally destroy it because of this litigation, Cockburn should be precluded from: (1) introducing any evidence or argument related to Apex's alleged spoliation of the gangway; and (2) asserting any argument or obtaining any presumption that any evidence of the gangway would have been unfavorable to Apex.[17] Apex asserts that PF&T, not Apex, had control of, and destroyed, the gangway and there is no evidence that it did so in bad faith to deprive Cockburn of using it in the litigation, especially considering that there was nothing wrong with it.[18] Apex also argues that "the gangway itself is entirely irrelevant to plaintiff's remaining claims asserted against Apex," because "[h]aving access to the original gangway would in no way assist plaintiff in proving his claims that Apex failed to train its employees in proper use of its gangways, that Apex was aware of any hidden defects in the gangway prior to the subject incident, that the gangway was allegedly improperly secured, that the gangway was untimely untied, or that the gangway was untimely removed."[19]

Cockburn, on the other hand, argues that he is entitled to an adverse presumption that any evidence of the gangway would have been unfavorable to Apex because, in his view, Apex had control of PF&T, and by extension the gangway, and intentionally destroyed it after it had notice

---

[14] R. Docs. 124-1 at 2; 174 at 2.
[15] R. Docs. 124-1 at 3; 174 at 2.
[16] R. Docs. 124-1 at 3; 174 at 2.
[17] R. Docs. 124-1 at 3-9; 174 at 3-8.
[18] R. Docs. 124-1 at 1-2; 174 at 1-2; 183 at 1-5.
[19] R. Docs. 174 at 7 (emphasis omitted); 183 at 4 (emphasis omitted).

of the litigation.[20] He contends that bad faith can be implied from the circumstances and their timing.[21] Cockburn further asserts that the gangway is obviously relevant to this litigation because he was injured when it fell and his marine safety expert should have had an opportunity to inspect it.[22] In the alternative to the adverse presumption, Cockburn requests, in his opposition memorandum, that the jury be permitted to hear evidence that the gangway was destroyed after the accident, and after suit was filed, in order to consider those facts in evaluating the credibility and weight of Apex's testimony, countervailing evidence, and defenses.[23]

**III.    LAW & ANALYSIS**

The spoliation-of-evidence doctrine pertains to the intentional destruction or the significant and meaningful alteration of evidence. *Van Winkle v. Rogers*, 82 F.4th 370, 374 (5th Cir. 2023). If a party intentionally destroys evidence in bad faith, "the trial court may exercise its discretion to impose sanctions on the responsible party or 'permit an adverse inference against the spoliator.'" *Garsaud v. Wal-Mart La., L.L.C.*, 2024 WL 1991574, at *2 (E.D. La. May 6, 2024) (quoting *Van Winkle*, 82 F.4th at 374). "This includes an instruction to the jury to infer that that the evidence would have been unfavorable to the party responsible for its destruction." *Id.* (quotation omitted). A party seeking a spoliation sanction must demonstrate that: "(1) the spoliating party controlled the evidence and had been under an obligation to preserve it at the time of destruction; (2) the evidence was intentionally destroyed with a culpable state of mind; and (3) the spoliating party acted in bad faith." *Id.* (citing *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020)). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

---

[20] R. Docs. 132-2 at 1-4; 173 at 6-11.
[21] R. Docs. 132-2 at 3-4; 173 at 2, 8-10.
[22] R. Doc. 173 at 8.
[23] *Id.* at 10-11.

In this case, there is no clear basis to impose an adverse presumption. Although Apex does not dispute that there was an obligation to preserve the evidence (the gangway) at the time it was destroyed (after suit was filed), it does dispute whether it had control over the gangway and whether the requisite bad faith has been demonstrated. On the present record, the Court cannot say whether or not Apex had control of the gangway, because the nature of its relationship with PF&T in regard to this incident is murky, at best. Also, while it is evident that the gangway was intentionally destroyed (scrapped in favor of a new gangway), it is unclear, on the present record, whether it was done with a "culpable state of mind," much less, bad faith, which would require destruction for the purpose of hiding evidence. So, in fairness to both sides, the Court will not grant Cockburn an adverse presumption, but neither will it bar him from introducing evidence or argument related to Apex's alleged spoliation of the gangway. The Court will instruct the jury that if it finds that Apex intentionally scrapped the gangway to prevent its use as evidence in this litigation, the jury may, but is not required to, infer that the lost evidence would have been unfavorable to Apex.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Apex's motion *in limine* to exclude evidence and argument related to spoliation of evidence (R. Doc. 124) is DENIED as to precluding Cockburn from introducing evidence or argument related to Apex's alleged spoliation of the gangway. The motion is GRANTED as to precluding Cockburn from claiming, at this juncture, an adverse presumption that the gangway would have been unfavorable to Apex. That question is left for trial.

IT IS FURTHER ORDERED that Cockburn's motion for adverse presumption (R. Doc. 132) is DENIED.

New Orleans, Louisiana, this 21st day of August, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE