UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLINE COCKBURN                                    CIVIL ACTION

VERSUS                                            NO. 22-2058

APEX OIL COMPANY, INC., *et al.*                  SECTION M (4)

## ORDER & REASONS

Before the Court are several motions related to plaintiff's treating physician Dr. Alexis Waguespack and lifecare planner Jordan Frankel, including: (1) plaintiff Cline Cockburn's motion *in limine* to exclude evidence of prior alleged acts of malpractice and credentialing records related to Dr. Waguespack;[1] (2) a motion *in limine* filed by defendants Buffalo Marine Service, Inc. ("Buffalo Marine") and Apex Oil Company, Inc. ("Apex") to exclude Dr. Waguespack's testimony;[2] and (3) Buffalo Marine and Apex's motion *in limine* to exclude Frankel's testimony.[3] Both sides respond in opposition to the other's motion(s),[4] and Buffalo Marine and Apex reply in further support of their motions.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

I.     BACKGROUND

This case concerns a personal injury. On July 5, 2021, plaintiff Cline Cockburn was employed by AmSpec Services, LLC ("AmSpec") as a petrochemical inspector performing work for Marathon Petroleum Company, LP aboard *in rem* defendant the M/V *San Roberto*, a vessel

---

[1] R. Doc. 133.
[2] R. Doc. 142.
[3] R. Doc. 141.
[4] R. Docs. 168; 170.
[5] R. Docs. 189.

owned and operated by defendant Buffalo Marine Service, Inc. ("Buffalo Marine").[6] At the time, the *San Roberto* was moored at a dock facility in Mt. Airy, Louisiana, that was owned by Apex.[7] Cockburn was injured while disembarking from the *San Roberto* when the gangway leading from the barge to the dock "gave way."[8] On July 5, 2022, Cockburn filed this suit against Apex, Buffalo Marine, and the *San Roberto*, *in rem*, and amended it on June 21, 2023, alleging negligence claims under Louisiana law, the general maritime law, and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b).[9]

In April 2022, nearly nine months after the accident, Cockburn began treatment with Dr. Alexis Waguespack, an orthopedic surgeon.[10] Dr. Waguespack ordered MRIs of Cockburn's cervical and lumbar spine, which were performed on April 12, 2022, and showed cervical disc herniations at the C3-4, C4-5, and C5-6 levels.[11] At a May 9, 2022 appointment, Dr. Waguespack recommended to Cockburn cervical injections and continued physical therapy.[12] Cockburn saw Dr. Waguespack four more times from July 2022 through January 2023, at which she administered Toradol injections and refilled pain medications, while awaiting payment approval from the longshore workers compensation adjustor for additional cervical injections.[13] As of July 25, 2023, approval had not been given.[14] In August 2022, Dr. Waguespack diagnosed Cockburn with myelopathy that required urgent decompression due to a risk of irreversible neurologic sequalae.[15] On September 25, 2023, Dr. Waguespack recommended to Cockburn a three-level anterior

---

[6] R. Doc. 38 at 3.
[7] *Id.*
[8] *Id.*
[9] R. Docs. 1; 38.
[10] R. Docs. 142-1 at 2; 168 at 2; 170 at 3.
[11] R. Doc. 170 at 3.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 4.

cervical discectomy and fusion at the C3-4, C4-5, and C5-6 levels.[16] The surgery was performed on October 27, 2023.[17] Cockburn continued to treat with Dr. Waguespack through 2023 and 2024. Ultimately, in July 2024, Dr. Waguespack note that an X-ray of Cockburn's back revealed C5-6 subsidence consistent with pseudoarthrosis delayed union.[18] After several more follow-up appointments, Dr. Waguespack performed a posterior fusion at the C3-4, C4-5, and C5-6 levels on October 18, 2024.[19] Cockburn developed an infection from the procedure that required irrigation and debridement.[20] Since the surgeries, Cockburn's pain has decreased, but he continues treatment with Dr. Waguespack.[21] Dr. Waguespack opines that Cockburn's back injury and surgeries were caused by the July 5, 2021 accident.[22] She also opines that Cockburn "will more probable than not need an adjacent level cervical fusion at C6-C7 over his lifetime."[23]

## II.  LAW & ANALYSIS

The pending motions concern the admissibility of: (1) Dr. Waguespack's testimony to the extent she may offer expert opinions on medical causation or necessity of treatment, or testify in any way as an expert; (2) evidence related to Dr. Waguespack's lapse in board certification; (3) evidence of malpractice complaints filed against Dr. Waguespack; and (4) Frankel's opinions that rely on Dr. Waguespack's future treatment recommendations.[24]

### A.  *Daubert* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).  In *Daubert v. Merrell Dow*

---

[16] *Id.*
[17] *Id.*
[18] *Id.* at 6-7.
[19] *Id.* at 8.
[20] *Id.*
[21] *Id.* at 8-9.
[22] *Id.* at 4.
[23] *Id.* at 10.
[24] R. Docs. 133; 141; 142.

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at

4

152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow*

*Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

### B. Dr. Waguespack

Buffalo Marine and Apex argue that Dr. Waguespack's testimony should be excluded to the extent she may offer expert opinions on medical causation or necessity of treatment, or testify in any way as an expert, because, they say, she lacks the requisite expertise and her opinions are not reliable or based on sufficient facts or data.[25] Buffalo Marine and Apex contend that Dr. Waguespack lacks expertise because she let her certification with the American Board of Orthopaedic Surgery lapse from January 1, 2021, to January 15, 2023, during part of Cockburn's treatment, which began in April 2022.[26] They have no objection to her testifying as a fact witness regarding Cockburn's treatment, which her certification does not implicate, but rather challenge her as an expert witness offering opinions that the treatment was caused by the accident at issue and was medically necessary.[27] Buffalo Marine and Apex also argue that Dr. Waguespack's

---

[25] R. Doc. 142-1 at 1.
[26] R. Docs. 142-1 at 4-6; 168 at 2.
[27] R. Doc. 189 at 2-3.

6

opinion that Cockburn's cervical symptoms and two cervical surgeries were more probable than not caused by the July 2021 incident is unreliable because her conclusions are based on Cockburn's self-reported pain nine months after the incident.[28] They point out instances of Cockburn falsely reporting medical data to Dr. Waguespack, such as his smoking history and denying prior pain and physical therapy treatment, and Cockburn failing to mention other accidents and injuries to Dr. Waguespack, to argue that Dr. Waguespack's opinion as to causation and necessary treatment are based on unsupported assumptions and X-rays that contradict her diagnosis.[29] Further, Buffalo Marine and Apex assert that Dr. Waguespack's opinions as to future surgeries are not admissible because she did not work on his lumbar spine and the diagnosis concerning that area is not related to the accident.[30]

In opposition, Cockburn argues that Dr. Waguespack's opinions are relevant and reliable.[31] First, Cockburn contends that Dr. Waguespack's temporary lapse in board certification does not mean that she lacked expertise, especially considering that her certification was reactivated by the time she performed Cockburn's surgeries.[32] In fact, Cockburn filed a motion *in limine* seeking to exclude from trial any evidence regarding Dr. Waguespack's lapse in board certification and any evidence concerning malpractice complaints lodged against her, arguing that such evidence is irrelevant and more prejudicial than probative, amounts to inadmissible "other acts" evidence, and was not properly disclosed by the defendants.[33] Cockburn also asserts that Dr. Waguespack's

---

[28] R. Docs. 142-1 at 7-10; 189 at 3-4.
[29] R. Doc. 142-1 at 7-8.
[30] *Id.* at 16-18. Buffalo Marine and Apex also assert that Cockburn failed to timely disclose Dr. Waguespack's opinions regarding future surgeries. *Id.* at 11-16. This Court has ruled in connection with other defense motions *in limine* that Cockburn's expert disclosures satisfied Rule 26.
[31] R. Doc. 170. Cockburn also argues that Buffalo Marine and Apex's motions *in limine* related to Dr. Waguespack and Frankel should be denied as untimely filed. *Id.* at 1-2. The Court will not do so because, although the deadline for *Daubert* motions was not explicitly extended with the trial continuance, defendants had good cause for the late filing and there is no prejudice to defendants in the Court ruling on the motion at this time
[32] *Id.* at 16-19.
[33] R. Doc. 133; *see also* R. Doc. 170 at 16-22.

causation opinions are reliably based on objective findings, such as MRIs, not simply Cockburn's self-reported symptoms.[34]

In response to Cockburn's motion *in limine* seeking to exclude from trial any evidence regarding Dr. Waguespack's lapse in board certification and malpractice complaints filed against her, Buffalo Marine and Apex argue that these issues are relevant and do not constitute inadmissible character evidence.[35]  They urge that the lapse in Dr. Waguespack's board certification undermines her qualification as an expert, credibility, and testimony regarding medical causation and the necessity and reasonableness of Cockburn's treatment.[36]  Buffalo Marine and Apex also contend that the medical malpractice complaints against Dr. Waguespack are relevant to undermine her credibility as to medical necessity and causation, especially because she was not truthful about these complaints at her deposition.[37]  They assert that both categories of contested evidence are more probative than prejudicial and that they made all required disclosures.[38]

Having weighed Dr. Waguespack's qualifications, history of treating Cockburn, and her deposition testimony against the arguments presented, the Court finds that she is qualified by education and experience to render opinions as to medical necessity and causation.  The opinions are reliable, considering her long career as an orthopedic surgeon and history of treating Cockburn.  While the temporary lapse in Dr. Waguespack's board certification does not make her unqualified to render the proffered opinions, it does raise questions as to her credibility and status at the time she began treating Cockburn.  As such, the Court will not exclude such evidence.  On the other

---

[34] R. Doc. 133 at 22-23.
[35] R. Doc. 168.
[36] *Id.* at 5-9.
[37] *Id.* at 9-11.
[38] *Id.* at 11-14.

hand, evidence about medical malpractice claims made against Dr. Waguespack are not relevant and would be more prejudicial than probative, and so will not be admitted into evidence. The questions raised by Buffalo Marine and Apex regarding the reliability of Dr. Waguespack's testimony, such as the basis for her diagnosis, causation opinion, and the necessity of future treatment, can be addressed through vigorous cross-examination and the presentation of countervailing expert testimony. Indeed, Buffalo Marine and Apex have already pointed out where their medical causation expert, Dr. Everett Robert, disagrees with Dr. Waguespack's treatment and opinions.[39] In sum, Dr. Waguespack will be permitted to testify as a fact witness regarding her treatment of Cockburn and as an expert concerning medical necessity and causation. Evidence regarding the lapse of Dr. Waguespack's board certification will be admitted, but evidence of malpractice complaints against her will not be admitted.

**C. Frankel**

Buffalo Marine and Apex argue that Frankel's testimony as to the cost of future medical treatment is predicated on Dr. Waguespack's recommendation for a cervical fusion and that such evidence should be excluded to the extent that Dr. Waguespack's testimony is excluded.[40] Cockburn responds that Dr. Waguespack's opinions on future treatment are admissible and, by extension, so are Frankel's opinions as to the cost of that treatment.[41] Because the Court is not excluding Dr. Waguespack's opinions on future treatment, it will not exclude Frankel's opinions based on them.

---

[39] R. Doc. 142-1 at 10-11.
[40] R. Docs. 141; 189 at 5.
[41] R. Doc. 170 at 14, 26.

### III.   CONCLUSION

Accordingly,

IT IS ORDERED that Cockburn's motion *in limine* to exclude evidence of prior alleged acts of malpractice and credentialing records related to Dr. Waguespack (R. Doc. 133) is GRANTED as to excluding evidence of prior alleged acts of malpractice. The motion is DENIED as to excluding evidence of Dr. Waguespack's credentialing records.

IT IS FURTHER ORDERED that Buffalo Marine and Apex's motion *in limine* to exclude Dr. Waguespack's testimony (R. Doc. 142) is DENIED.

IT IS FURTHER ORDERED that Buffalo Marine and Apex's motion *in limine* to exclude Frankel's testimony (R. Doc. 141) is DENIED.

New Orleans, Louisiana, this 22nd day of August, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE