UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLINE COCKBURN                                          CIVIL ACTION

VERSUS                                                  NO. 22-2058

APEX OIL COMPANY INC, *et al.*                          SECTION M (4)

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendants-in-intervention Cline Cockburn and the Shlosman Law Firm, L.L.C. ("SLF") (together, "Defendants in Intervention").[1]  Intervenors Caitlin B. Carrigan and Scott Vicknair, LLC ("Scott Vicknair") (together, "Intervenors") respond in opposition,[2] and Defendants in Intervention reply in further support of their motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion in part and denying the motion in part.

I.      **BACKGROUND**

On July 5, 2021, Cockburn was injured as he descended a gangway between a barge and a dock.[4]  At the time of his injury, he was employed by AmSpec Services, LLC.[5]  He later brought this action against the vessel upon which he worked, the owner of the vessel, the owner of the dock facility at which the vessel was moored, and a party for which he alleged the dock facility owner was acting as a contractor and/or subcontractor.[6]

---

[1] R. Doc. 262.
[2] R. Doc. 267.
[3] R. Doc. 271.
[4] R. Docs. 262-3 at 1; 267-1 at 1.
[5] R. Docs. 262-3 at 1; 267-1 at 1.
[6] R. Doc. 38 at 3.

Seeking legal representation for the claims arising out of his July 5, 2021 injury, Cockburn contacted SLF on March 16, 2022.[7]  On March 17, 2022, Thomas Shlosman of SLF contacted Carrigan to inquire whether she was interested in assisting SLF on the matter.[8]  On March 18, 2022, Cockburn executed a Contingency Fee Agreement and Authority to Represent (the "Agreement").[9]  The provision in the Agreement pertaining to attorney's fees is reproduced in full below:

> 1. ATTORNEYS FEES.  I understand that I have employed the firm [*i.e.*, SLF] to represent me on a contingent fee basis.  I will not be required to pay a fee for legal services as they are being performed, but I agree to compensate the Shlosman Law Firm a percentage of the total amount recovered by me at the conclusion of the matter.  The percentage paid to compensate the Shlosman Law Firm will vary depending upon the point in the litigation at which the recovery is made, based on the following:
>
> A. 33.3% of any settlement verdict, or final recovery.
>
> NO FEE UNLESS WE WIN.  I understand that I will not owe the Shlosman Law Firm for attorney's fees or case costs in the event that my claim or suit is unsuccessful, and I recover no amount for my injury or claim.
>
> Fee Division: Client [*i.e.*, Cockburn] has been advised that the Attorneys will jointly represent Client in the Matter [*i.e.*, the July 5, 2021 incident], and Client hereby agree [*sic*] to being jointly represented by Attorneys in the Matter. Furthermore, Client consents to the division between Attorneys of any fees recovered in the Matter.  This sharing of attorney's fees WILL NOT INCREASE THE TOTAL FEE PAID BY CLIENT. Fees to be paid to Attorneys will be split 50% to Caitlin B. Carrigan and 50% to Shlosman Law Firm. This provision is provided and entered into in order to comply with Rule 1.5(c) of the Louisiana Rules of Professional Conduct.[10]

Shlosman and Carrigan represented Cockburn together for over two years,[11] although the facts of such representation are highly disputed.  Specifically, Cockburn's injuries gave rise to both tort claims, which were brought in the captioned matter, and worker's compensation claims

---

[7] R. Docs. 262-3 at 1; 267-1 at 1.
[8] R. Docs. 262-3 at 2; 267-1 at 1-2.
[9] R. Docs. 262-3 at 2; 262-6 at 1.
[10] R. Doc. 267-3 at 25.
[11] R. Doc. 267 at 3.

brought pursuant to the Longshore and Harbor Workers' Compensation Act (the "LHWCA") and the Louisiana State Workers' Compensation Act (collectively, the "worker's compensation claims"), which proceeded "before the Office of Workers' Compensation, the Department of Labor and/or the Office of Administrative Law Judges."[12]  Intervenors maintain that Carrigan's representation involved both the worker's compensation and tort claims.[13]  Defendants in Intervention insist that Carrigan only handled matters related to the worker's compensation claims.[14]  Although the parties do not agree whether her termination was for cause, it is undisputed that on July 14, 2024, Cockburn terminated Carrigan.[15]

On August 26, 2024, Intervenors filed a petition of intervention against Cockburn.[16]  On March 27, 2026, Intervenors filed an amended petition of intervention and third-party demand against both Defendants in Intervention.[17]  In the amended petition, Intervenors alleged that "[t]he Agreement constituted both a valid joint venture agreement under Louisiana Civil Code article 2801, and a valid fee splitting agreement pursuant to Rule 1.5(e) of the Louisiana Rules of Professional Conduct," such that Intervenors were entitled to a 50% interest in Cockburn's claims.[18]  Intervenors' amended petition goes on to allege that Shlosman stopped including Carrigan in litigation discussions, hired maritime attorney Barrett Rice and agreed to give her 3% of the attorney's fees in the case, demanded that Intervenors reduce their 50% share of the attorney's fees, and then drafted a letter from Cockburn terminating Intervenors for cause.[19] Intervenors aver that, "[o]n information and belief, Shlosman desired to retain a larger percentage

---

[12] R. Doc. 254 at 3-4 (quote at 3).
[13] R. Doc. 267 at 2-3.
[14] R. Doc. 262-3 at 2-6.
[15] *Id.* at 6; R. Doc. 267-1 at 9.
[16] R. Doc. 81.
[17] R. Doc. 254.
[18] *Id.* at 3.
[19] *Id.* at 8-11.

of any attorney's [fees], in part to pay for Barrett Rice's work, and he convinced Cockburn to terminate Intervenors."[20]

Intervenors' amended petition asserts two counts against Defendants in Intervention. In Count I (breach of contract and/or *quantum meruit* against Cockburn), Intervenors allege that Cockburn owes them "the full fee as stated in the Agreement from any recovery … obtained by Cockburn" – which Intervenors say amounts to $259,250 – as a result of Cockburn's termination of Intervenors without cause and subsequent refusal to pay Intervenors any portion of the attorney's fees.[21] Intervenors allege in the alternative that they "are entitled to recover reasonable attorney's fees for the value of services they have rendered and all costs and expenses" on a *quantum meruit* theory.[22] In Count II, Intervenors claim that the Agreement they executed on March 18, 2022 was "a valid and binding joint venture agreement for the joint representation of Cockburn."[23] Intervenors say that "Shlosman … breached the parties' joint venture agreement and the duties owed to Intervenors by purposely and/[or] intentionally excluding Intervenors from litigation proceedings, and thereafter, convincing Cockburn to terminate Intervenors without cause."[24] Intervenors claim that they are entitled to recover all damages that are a direct consequence of Shlosman's breach of the joint venture agreement.[25]

## II.    PENDING MOTION

In their summary-judgment motion, Defendants in Intervention provide four reasons they are entitled to summary judgment on Intervenors' claims. The Court will, in turn, summarize the briefing on each of Defendants in Intervention's four arguments. Intervenors, in their opposition,

---

[20] *Id.* at 13.
[21] *Id.* at 14-15 (quote at 15).
[22] *Id.* at 15.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 16.

raise an additional argument – that summary judgment is procedurally improper – which the Court will also explain in turn.

### A. Defendants in Intervention first argue that there is no genuine dispute of material fact that Carrigan was terminated for cause, so *O'Rourke v. Cairns*, 683 So. 2d 697, 704 (La. 1996), applies to reduce any fees to which Intervenors may be entitled.

First, Defendants in Intervention contend that, because Cockburn terminated Carrigan for cause before the matter resolved, the Court should reduce the amount of the contingency fee that Intervenors would receive.[26] Specifically, Defendants in Intervention say that, where counsel in a contingency-fee case is discharged before resolution of the matter, and then another attorney resolves the matter, the single applicable contingency fee must be divided between the counsel in accordance with *Saucier v. Hayes Dairy Products, Inc.*, 373 So. 2d 102, 118 (La. 1979).[27] Then, Defendants in Intervention urge that, where the first attorney was discharged for cause, *O'Rourke* requires that the so-called "*Saucier* allocation" should be reduced in proportion to "'the nature and gravity of the cause.'"[28] Next, Defendants in Intervention point to *Simar v. Tetra Technologies*, 2019 WL 3810001, at *2-4 (W.D. La. Aug. 13, 2019), which it says is "directly analogous" and in which the court found a for-cause termination and reduced a terminated attorney's fee in a maritime personal injury case in accordance with *Saucier* and *O'Rourke*.[29] Defendants in Intervention then assert that Cockburn terminated Carrigan for her purported absence from critical litigation events, her failure to obtain LHWCA carrier payment for Cockburn's neck surgery, and her lack of responsiveness to Cockburn's phone calls and requests for indemnity check payments, which, taken together, Defendants in Intervention say amounts to termination for cause.[30] Finally,

---

[26] R. Doc. 262-4 at 14-16.
[27] *Id.* at 14.
[28] *Id.* (quoting *O'Rourke*, 683 So. 2d at 704).
[29] *Id.*
[30] *Id.* at 15.

Defendants in Intervention explain that, although Cockburn sent Carrigan complimentary text messages, those messages do not negate a finding that Cockburn terminated Carrigan for cause because the messages predated Cockburn's grievances with Carrigan.[31]

Intervenors respond that "Defendants' reliance on *Saucier* is misplaced" because *Saucier* does not stand for the proposition that whether an attorney was terminated for cause can be decided as a matter of law.[32]  Further, Intervenors say that *Saucier* is inapplicable here because there is no dispute that Cockburn is liable for only a single contingency fee.  Instead, argue Intervenors, the instant dispute is "how the one contingency fee owed by Mr. Cockburn should be apportioned under the attorney-to-attorney Joint Venture Agreement."[33]  Intervenors next urge that, under *O'Rourke*, "'ascertaining whether termination of their attorney was with or without cause is a factual determination'" that cannot be decided on summary judgment.[34]  And, say Intervenors, the facts underlying the Defendants in Intervention's position that Carrigan was terminated for cause are disputed or manufactured.[35]

In their reply, Defendants in Intervention argue that the record contains objective, third-party evidence establishing cause for Carrigan's termination, pointing to an October 25, 2023 letter from worker's compensation defense counsel, Cockburn's deposition testimony, a November 2023 text message from Cockburn's fiancée, and Cockburn's termination letter.[36]  Defendants in Intervention intone that such evidence "satisfies the *O'Rourke* standard many times over."[37]

---

[31] *Id.* at 15-16.
[32] R. Doc. 267 at 18-19.
[33] *Id.* (quote at 19).
[34] *Id.* at 20 (quoting *O'Rourke*, 683 So. 2d at 703).
[35] *Id.* at 20-21.
[36] R. Doc. 271 at 4-5.
[37] *Id.* at 5.

**B. Defendants in Intervention next argue that they are entitled to summary judgment on fees earned from the worker's compensation claims because, as a matter of law, Intervenors cannot take a contingency fee from those claims without the appropriate approval.**

Second, Defendants in Intervention argue that Intervenors cannot recover attorney's fees under the contingency-fee agreement for their work on the LHWCA claims.[38]   Defendants in Intervention submit that the contingency-fee agreement executed by the parties covers only tort claims for the damages arising from Cockburn's July 5, 2021 accident, and LHWCA compensation claims are not included in the contingency-fee agreement.[39]   Further, Defendants in Intervention argue that 33 U.S.C. § 928(e) provides that an administrative law judge ("ALJ") must approve all attorney's fees for worker's compensation work and criminalizes any fees taken without such approval.[40]   And, say Defendants in Intervention, since Carrigan sought no ALJ approval in this case, she "can and should pursue her LHWCA fee via ALJ approval, not through Mr. Cockburn's tort case."[41]   Defendants in Intervention assert that Carrigan's and Cockburn's deposition testimony both show that Carrigan worked only on the worker's compensation claims, not the tort claims, and that Carrigan's argument that the claims are "necessarily intertwined" has already been considered and rejected by the court in *Simar*.[42]

In response, Intervenors state that there are material facts in dispute which pertain to the recovery of attorney's fees on the LHWCA compensation claims.  First, Intervenors argue that Carrigan and David Vicknair, along with the law firm Scott Vicknair, were enrolled in the matter, signed the complaint, and participated in the representation of Cockburn in the third-party litigation.[43]   They also submit that Defendants in Intervention's insistence that Carrigan worked

---

[38] R. Doc. 262-4 at 16-17.
[39] *Id.* at 16.
[40] *Id.*
[41] *Id.*
[42] *Id.* at 17.
[43] R. Doc. 267 at 22.

only on the LHWCA compensation claims "is a drastic mischaracterization of the facts."[44] Intervenors ultimately agree that attorneys are not permitted to take a contingency fee on Cockburn's portion of recovered benefits on his LHWCA claims, but must petition an ALJ for fees, and they represent that they are currently pursuing such fees.[45]  However, Intervenors say that the attorneys' agreement merely provides "that the attorney fees recovered between the attorneys, regardless of what was eventually collected/recovered on [the l]ongshore [claims], would be split on a 50/50 basis."[46]

Defendants in Intervention do not address this argument again in their reply.

### C. Defendants in Intervention argue that Cockburn is entitled to summary judgment on Count I because Intervenors cannot receive the relief they seek from Cockburn.

Defendants in Intervention next argue that they are entitled to summary judgment on Intervenors' breach-of-contract claim against Cockburn.[47] Defendants in Intervention observe that the sole remedy available for Intervenors' alleged breach of contract – Cockburn's discharge of Carrigan – is a *Saucier* allocation of the sole contingency fee.[48]  Further, Defendants in Intervention say that Intervenors' contention in paragraph 12 of the first amended petition – "that the contingency fee agreement 'resulted in an assignment of a 50% interest in Cockburn's claim(s)' to Intervenors" – would contradict *Saucier*.[49]

Intervenors do not directly address this argument in their opposition, although the Court notes that Intervenors do respond to Defendants in Intervention's reliance on *Saucier* in their

---

[44] *Id.*
[45] *Id.*
[46] *Id.* at 23 (emphasis omitted).
[47] R. Doc. 262-4 at 17-18.
[48] *Id.* at 17 (citing *Saucier*, 373 So. 2d at 118).
[49] *Id.* at 18 (quoting R. Doc. 254 at 3).

8

opposition.[50]   Defendants in Intervention, in their reply, submit that they are entitled to summary

judgment on this count on the basis that Intervenors failed to respond to their argument.[51]

> **D. Fourth and finally, Defendants in Intervention argue that they are entitled to summary judgment because Louisiana jurisprudence precludes claims between co-counsel for breach of fiduciary duty with respect to an attorney's interest in prospective fees.**

Defendants in Intervention next argue that Intervenors' claim against Shlosman for breach

of a joint venture agreement fails as a matter of law pursuant to *Scheffler v. Adams & Reese, LLP*,

950 So. 2d 641 (La. 2007).[52]   Defendants in Intervention explain that, in *Scheffler*, the Louisiana

supreme court held that "'no cause of action will exist between co-counsel based on the theory that

co-counsel have a fiduciary duty to protect one another's prospective interests in a fee.'"[53]   And,

say Defendants in Intervention, Intervenors' claim is the exact type of claim prohibited by *Scheffler*

because the claim "asks this Court to impose upon Shlosman a duty to have conducted the

representation in a manner that would preserve Mrs. Carrigan's interest in receiving 50% of the

fee."[54]   Defendants in Intervention then contend that, although Intervenors allege they and

Shlosman entered into a joint venture agreement (unlike the attorneys in *Scheffler*), the *Scheffler*

prohibition on breach-of-fiduciary-duty claims still applies for two reasons.[55]   First, Defendants in

Intervention maintain that the *Scheffler* court, in footnote 2 of its opinion, recognized that attorneys

who enter a fee-splitting agreement to jointly represent a client become "joint adventurers" – a

fiduciary relationship – and announced its bright-line rule anyway.[56]   Second, Defendants in

Intervention point out that *Scheffler*'s footnote 2 noted that, in that case, the plaintiff's petition

---

[50] *See supra* text accompanying notes 32-33.
[51] R. Doc. 271 at 9-10.
[52] R. Doc. 262-4 at 19.
[53] *Id.* (quoting *Scheffler*, 950 So. 2d at 653).
[54] *Id.* at 20.
[55] *Id.* at 20-21.
[56] *Id.* at 21.

failed to adequately allege the elements of a joint venture, and Defendants in Intervention argue that Intervenors' petition similarly fails to adequately allege the elements of a joint venture.[57] Finally, Defendants in Intervention urge that Shlosman's paramount duty is to his client, Cockburn, and that to hold him liable in damages for decisions he made about the prosecution of Cockburn's tort claims "would do precisely what *Scheffler* forbids: it would impose upon him a duty to conduct Cockburn's representation in a manner that protected Mrs. Carrigan's prospective fee interest, in direct conflict with his duty of undivided loyalty to Cockburn."[58]

In opposition, Intervenors argue that, under Louisiana jurisprudence, where a retained attorney associates another attorney to assist him in a contingency-fee case, the fee-division agreement is a joint venture agreement as a matter of law.[59]   Intervenors further argue that Louisiana jurisprudence supports rather than prohibits enforcement of a fee-division provision in a joint venture agreement.[60]  Specifically, Intervenors point to *Spears v. Hall*, 429 So. 3d 291 (La. 2006), which they say "confirms that an agreement between attorneys to jointly represent a client and share in the resulting fee may constitute a joint venture governed by partnership and contract principles."[61]   And, say Intervenors, although *Spears* ultimately held that the joint venture agreement and fiduciary obligations present between the two attorneys in that case had been extinguished, and thus the court there ordered no fee-sharing, the relationship between Carrigan and Shlosman is distinguishable and fee-sharing should be ordered.[62]  Intervenors also urge that *Scheffler* is distinguishable from the case at hand because *Scheffler* involved two attorneys

---

[57] *Id.*
[58] *Id.* at 22-23 (quote at 22).
[59] R. Doc. 267 at 14 (citing *Scurto v. Siegrist*, 598 So. 2d 507, 509-10 (La. App. 1992)).
[60] *Id.* at 15.
[61] *Id.* at 15-16 (quote at 16).
[62] *Id.* at 16-17.

10

independently retained by the client, whereas here, Shlosman and Carrigan entered an agreement between themselves to jointly represent Cockburn.[63]

### E. Intervenors argue that summary judgment is procedurally improper.

In their opposition, Intervenors generally submit that, if the proper summary-judgment standard is applied, Defendants in Intervention's motion should be denied.[64]  First, they contend that the existence or non-existence of a joint venture agreement is a question of fact improper for summary judgment. [65]  Second, Intervenors argue that genuine issues of material fact preclude summary judgment on all of Defendants in Intervention's arguments.[66]  In their reply, Defendants in Intervention rely on *Langley v. Norton*, 2003 WL 21991643 (E.D. La. Aug. 19, 2003), in which a court in this district applied the *Saucier/O'Rourke* framework on summary judgment to a discharged attorney's claim for attorney's fees, for the contention that summary resolution of the matter is appropriate.[67]

## III.    LAW & ANALYSIS

### A. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[63] *Id.* at 17 & n.79.
[64] R. Doc. 267 at 11.
[65] *Id.* at 12.
[66] *Id.* at 12-13.
[67] R. Doc. 271 at 1-2.

and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

12

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Analysis

**1. Defendants in Intervention are entitled to summary judgment on Count I, Intervenors' breach-of-contract and/or *quantum meruit* claim against Cockburn.**

In Count I of the amended petition of intervention, Intervenors assert a claim for breach of contract and/or *quantum meruit* against Cockburn. Defendants in Intervention argue that they are entitled to summary judgment on Intervenors' breach-of-contract claim against Cockburn because the only relief that Intervenors are entitled to is a proportionate allocation of the contingency fee that Cockburn agreed to pay.[68] Intervenors represent that "there is no contention that Mr. Cockburn must pay two separate contingency fees."[69] The Court finds that Cockburn is entitled

---

[68] R. Doc. 262-4 at 17-18.
[69] R. Doc. 267 at 19.

to summary judgment on Count I because all parties agree that Cockburn can owe only one contingency fee in the case, which he has already paid.

Although the allocation of the contingency fee which Cockburn owes on his claim is heavily disputed, no party disputes that Cockburn owes more than one contingency fee. Intervenors seek only apportionment of Cockburn's single contingency fee in accordance with their reading of the Agreement.[70]  Further, there is no evidence or argument that Cockburn has not paid or is withholding any portion of his recovery which represents his attorneys' contingent fee. To the contrary, Intervenors allege that "[t]he fee owed to Intervenors is $259,250, *and it is presently being held in an escrow account*."[71]  This allegation is supported by Shlosman's expense ledger, which shows that $259,250 is being held in Shlosman's trust account on behalf of Carrigan.[72]  Whatever portion of the fee Intervenors may ultimately be entitled to, if any, will be recovered from that sum.  Cockburn thus has paid his one contingency fee, so he cannot owe any more money as fees to Intervenors.  As a result, Cockburn is entitled to summary judgment in his favor on the breach-of-contract and/or *quantum meruit* claim asserted in Count I.

### 2. Defendants in Intervention are not entitled to summary judgment on Count II, Intervenors' claim for breach of a joint venture agreement.

In Count II, Intervenors assert a claim against Shlosman for breach of a joint venture agreement.  Defendants in Intervention argue that Shlosman is entitled to summary judgment because (1) *Scheffler* precludes claims between co-counsel for breach of fiduciary duty with respect to one's interest in attorney's fees; (2) there is no genuine dispute of material fact that Carrigan was terminated for cause and, thus, any fees to which she is entitled are subject to reduction under *O'Rourke*; and (3) the contingency-fee agreement cannot legally apply to

---

[70] *Id*.

[71] R. Doc. 254 at 15 (emphasis added).

[72] R. Doc. 262-17 at 5.

14

Cockburn's LHWCA claims, and Carrigan did not contribute significant work to Cockburn's tort claims. The parties do not agree on the method that should be used to make the proper allocation of attorney's fees – Defendants in Intervention argue that *Saucier* and *O'Rourke* will apply, while Intervenors seek to enforce the joint venture agreement to yield an equal split of attorney's fees. Regardless of the applicable framework, for the reasons stated below, the Court denies Defendant in Intervention's summary-judgment motion both with respect to any fees earned from Cockburn's LHWCA claims and with respect to the fees earned from Cockburn's tort claims.

### a. *Scheffler* does not prohibit Intervenors' claim against Shlosman because Intervenors do not seek to recover damages for lost prospective fees.

Defendants in Intervention argue that they are entitled to summary judgment because Intervenors' claim against Shlosman for breach of a joint venture agreement is precluded by *Scheffler*. However, Defendants in Intervention's reliance on *Scheffler* is misplaced because the Louisiana supreme court's holding in *Scheffler* applies to prospective fees only.

*Scheffler* involved a casino, Boomtown Casino Westbank ("Boomtown"), whose general counsel, James Perdigao, was a partner at Adams & Reese. 950 So. 2d at 645. Boomtown retained William Scheffler, an attorney who maintained a separate private law practice, to represent the casino in personal injury claims filed against it, but the casino explained to Scheffler that his retention was subject to Perdigao's approval. *Id.* Perdigao approved Scheffler's retention, and for nearly two years, Scheffler represented Boomtown without incident and received a monthly retainer fee as well as reimbursement of all litigation costs. *Id.* Later, Perdigao was removed as general counsel of Boomtown for alleged unethical conduct, and then Boomtown terminated Scheffler as outside counsel "in light of recent events." *Id.* Scheffler filed a petition for damages against Perdigao and Adams & Reese, asserting a claim for breach of fiduciary duty, among others, and seeking "general damages in the form of past, present, and future economic loss, mental

15

anguish, and loss of earning capacity." *Id.*  The *Scheffler* court found that, based on Scheffler's factual allegations, there was no fiduciary relationship between Perdigao and Scheffler. *Id.* at 648-49.  Further, recognizing that an attorney's paramount duty is to his or her client, the court established a bright-line rule that "no cause of action will exist between co-counsel based on the theory that co-counsel have a fiduciary duty to protect one another's prospective interests in a fee." *Id.* at 651-53 (quote at 653).

*Scheffler* does not preclude Intervenors' claim here as a matter of law because Intervenors seek to recover fees they claim they have already earned.  *Scheffler*'s holding is limited to "[t]he narrow issue … [of] whether one co-counsel may sue another for breach of fiduciary duty on the theory that the latter's misconduct in handling the representation reduced or eliminated the *prospective fees* the former expected to realize from the joint representation." *Id.* at 649 (emphasis added).  Intervenors' claim against Shlosman for breach of the joint venture agreement arises out of the contract for fees, not a breach of fiduciary duty, and it seeks to recover those fees which Intervenors claim they have already earned in the case, not prospective fees.  Although Intervenors allege that Shlosman, "motivated solely by a desire to increase the amount of attorney's fees he, personally, would receive,"[73] encouraged his client to terminate Carrigan, they do not specifically seek damages in tort for such action.   Instead, Intervenors seek to enforce the contractual agreement they executed in connection with their representation of Cockburn – specifically, the 50-50 fee-sharing provision.  Therefore, Defendants in Intervention are not entitled to summary judgment on the basis of the Louisiana supreme court's holding in *Scheffler*.

---

[73] R. Doc. 254 at 15-16 (quote at 16).

16

### b. Summary judgment on the issue of attorney's fees earned from Cockburn's LHWCA claims is premature.

Although Cockburn asserted only tort claims in the underlying matter,[74] Intervenors represent that they brought LHWCA claims on Cockburn's behalf in the appropriate forum.[75] Attorney's fees for LHWCA claims are governed by statute, specifically, 33 U.S.C. § 928, which criminalizes attorney's fees taken without approval of "the deputy commissioner, administrative law judge, [Benefits Review] Board, or court." 33 U.S.C. § 928(e). Defendants in Intervention argue in their summary-judgment motion that the contingency-fee agreement cannot apply to Cockburn's LHWCA claims. Intervenors agree that they cannot take a contingency fee from Cockburn's LHWCA recovery, and they represent that they are currently pursuing an award of fees with respect to the LHWCA claims. However, Intervenors indicate that they still seek to recover 50% of the fee ultimately approved for the LHWCA claims, which recovery is in accordance with Intervenors' reading of the attorneys' agreement and is legal to take.

It is premature for this Court to grant summary judgment with respect to any attorney's fees Intervenors may seek for Cockburn's LHWCA recovery because only the appropriate reviewing body can determine the fee which Intervenors or Shlosman could permissibly take for such recovery. *See* 33 U.S.C. § 928(c); *Ayers S.S. Co. v. Bryant,* 544 F.2d 812, 814 (5th Cir. 1977) ("[A court who has not adjudicated the merits of an LHWCA claim] ha[s] neither the authority nor the competence … to ascertain what fees [the attorney was] to be awarded by the Administrative Law Judge. The statute … intends each body the hearing examiner, the [Benefits Review] Board, and the reviewing court separately to assess the worth of the claimant's representation before it. Hence, we will only award fees for the work of counsel which was directly related to our review.");

---

[74] R. Doc. 34 at 4-7 (asserting claims for negligence and vicarious liability).
[75] R. Doc. 254 at 3.

*Simar*, 2019 WL 3810001, at *2. By the parties' account, neither party has received approval of fees to be recovered in conjunction with Cockburn's LHWCA recovery. According to Intervenors, they have filed an attorney fee approval request form with an ALJ, as well as a notice of intervention, and "are still pursuing fees" for the LHWCA claims.[76] So, at this juncture, there are no fees for this Court to allocate in any event. To the extent that Intervenors argue that they are entitled to one-half of the fee that will ultimately be approved for the LHWCA claims, that question is not ripe for decision.[77]

### c. There are genuine disputes of material fact as to whether Carrigan contributed meaningful work to Cockburn's tort claims and as to whether she was terminated for cause.

Even assuming the *Saucier/O'Rourke* framework applies, Defendants in Intervention are not entitled to summary judgment on the portion of Intervenors' claim that seeks to recover attorney's fees for the work Intervenors contributed to the litigation of Cockburn's tort claims because there are genuine disputes of material fact as to (1) whether Carrigan rendered meaningful legal services for Cockburn in that matter and (2) whether Carrigan was terminated for cause.

Defendants in Intervention argue that it cannot be genuinely disputed that Carrigan did not work on Cockburn's tort claims and thus, pursuant to *Saucier*, is entitled to no portion of the fees for those claims. However, Carrigan has provided evidence from which a reasonable jury could conclude that she meaningfully participated in Cockburn's tort representation. Specifically, Carrigan has provided evidence that she assisted in researching and drafting the complaint for Cockburn's tort claims.[78] Carrigan also provides evidence that she offered to take on more

---

[76] R. Docs. 267 at 23; 267-13.

[77] The Court notes that Intervenors' record evidence indicates that Shlosman has waived any fee to be taken from the LHWCA recovery. R. Doc. 267-14 at 1. It seems, then, that Intervenors are the only parties who will be awarded a fee for Cockburn's LHWCA claims.

[78] *E.g.*, R. Doc. 267-3 at 61-65, 125-29, 154-162.

18

responsibility for that litigation, but Shlosman scheduled depositions and other crucial litigation events without her knowledge.[79]  A reasonable jury might consider such evidence relevant to the question of whether Carrigan meaningfully assisted with Cockburn's tort claims.  Together, the weight of Carrigan's evidence creates, at the very least, genuine disputes of material fact as to the extent of her contribution with respect to Cockburn's tort claims.

Defendants in Intervention rely on *Simar v. Tetra Technologies Inc.* for the proposition that an attorney's work on a client's LHWCA claims is unrelated to the attorney's work on that client's tort claims as a matter of law, but that argument is not convincing.  This Court is not convinced that *Simar*'s narrow holding, meant to apply only to the facts of that case, is controlling or analogous here.  2019 WL 3810001, at *3.  Intervenors are not seeking recovery of fees under the rubric of a contingency-fee contract but, instead, pursuant to a joint venture agreement.  This distinction is determinative here.

Defendants in Intervention also argue that there is no genuine dispute of material fact that Carrigan was terminated for cause, so, they say, *O'Rourke* applies to reduce any fees to which Intervenors may be entitled.  Assuming without deciding that *O'Rourke* applies, summary judgment is improper because there is a genuine dispute of material fact as to whether Carrigan was terminated for cause.  In support of their position, Defendants in Intervention point to an October 25, 2023 letter from worker's compensation defense counsel, Cockburn's deposition testimony, a November 2023 text message from Cockburn's fiancée, and Cockburn's termination letter dated July 14, 2024.  However, Carrigan provides a number of communications between Cockburn and herself or her colleagues that describe Cockburn's satisfaction with her services as late as April of 2024.[80]  Defendants in Intervention assert that these positive text messages "do[]

---

[79] *Id.* at 12-14.
[80] R. Doc. 267 at 3-10; *see, e.g.*, R. Docs. 267-11 at 14, 18.

not foreclose a later, legitimate for-cause termination when circumstances materially change,"[81] and this Court agrees that a reasonable jury could find that Carrigan was terminated for cause despite the complimentary messages. Such messages do, however, create a genuine dispute of material fact that prevents a summary-judgment determination at this juncture as to whether Carrigan was terminated for cause.

As a result, even assuming the framework Defendants in Intervention advance is applicable to the instant matter, summary judgment on the fees derived from Cockburn's tort claims is not now appropriate.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants in Intervention's motion for summary judgment (R. Doc. 262) is GRANTED as to Intervenors' breach-of-contract and/or *quantum meruit* claim and DENIED as to Intervenors' claim for breach of the joint venture agreement.

New Orleans, Louisiana, this 9th day of June, 2026.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[81] R. Doc. 262-4 at 15.